All right, are you ready to proceed? I am, thank you. All right. May it please the Court? All right, you may proceed. Good morning. Thank you very much for agreeing to hear oral argument on this case. My name is Amanda Rycheck, and I represent the appellant, Michelle Jackson, who is the plaintiff in the district court proceeding. Michelle Jackson has brought two claims under the Family and Medical Leave Act, an interference claim under 29 U.S.C. 2615A1, and a retaliation claim under 29 U.S.C. 2615A2. Even though there are literally thousands of cases that state that claims under A1 are entitlement claims where the employer's intent is immaterial, BNSF has argued, and the district court accepted, the application of an honest belief defense to defeat this claim. We believe this is improper. It is our further position that even if the honest belief defense is available to BNSF, in theory, it fails in its application to the facts of this case. Well, an interference claim, I mean, assuming you're right, there's no intent for that that you have to show, but you only have an interference claim, you're only entitled to leave if you're an employee, right? Correct. So isn't that why this whole thing ends up being wrapped up in whether she was properly fired or not? I mean, if they shouldn't have fired her, if they don't have grounds for firing her, yes, she was entitled to leave. I don't think there's any dispute about that. But if she was properly fired, then a non-employee doesn't have entitlement to leave, right? Correct. So why isn't it all wrapped into whether she was lawfully fired? I know you say it was retaliation and that we have to decide, but doesn't that become the whole case? Yes, yes. We are here because my client was fired, and we believe that her firing interfered with her rights under the FMLA. She was fired while she was on FMLA. And so our position is that by firing her, the employer interfered with her rights under the statute. But it all turns on whether she was unlawfully retaliated against. No. There are two different claims. There's an interference claim, which is an entitlement claim. I understand the difference, but I'll go back to what I said. If she was lawfully terminated, how can she have a right to leave? Because she was on leave before she was terminated. Okay. So you're saying if someone's on leave and the employer lawfully terminates them because they found out they embezzled thousands of dollars. That's okay. The employer is well within its right to fire that employee because it's not a strict liability statute. Right. So it all comes down to whether they lawfully fired her. It sounds like we agree on that. Correct. Okay. Correct. Yes. And a lawful termination would not interfere with her rights under the FMLA because people on leave don't have superior rights. Right. So that's why it seems to me the whole issue is whether she was lawfully terminated, which the company says she was. You say she was unlawfully terminated because it was retaliation for exercising her leave. That's right. Okay. That's right. The same set of facts gives rise to two different claims. And the first is one where intent is not important. It's like it's a prescriptive statute in that respect. It imposes obligations on the employer and it cannot escape those obligations by showing that it made any sort of mistake because its intent is not material. The same set of facts gives rise to a retaliation claim where intent is important and the honest belief defense has a role. Our position is that the court impermissibly used an honest belief defense for an entitlement claim where there's no statutory availability for that claim. Counsel, maybe this is some of the same question, but my interest here is what was the disability of this lady that the employer knew about? She took Family and Medical Leave Act for depression. Pardon? She took FMLA leave for depression. She's diagnosed with depression. Did the employer know about this? This goes to the TCHRA claim, but we believe that we have enough to show that they had the knowledge that the law requires them to have. Now, Ms. Courageous, who made the decision to terminate my client, testified that she did not know what my client's disability was. However, she did understand that she had an impairment because she was entitled to FMLA leave. And it's our position that that's enough for a regarded as disability discrimination claim. On a broad level, employment statutes are divided up into two different kinds, prescriptive statutes and proscriptive statutes. And a good example of a prescriptive statute would be the Fair Labor Standards Act, the overtime statute. If an employee meets certain requirements, that employee is entitled to overtime. And it is no defense for the employer to say, oh, my bad, I thought this was an independent contractor. In that case, the intent is not important. They meet the test. They get overtime. COBRA is another example. When an employee is terminated, they have COBRA health insurance continuation rights. They get those. It's a matter of statute. There's no ifs, ands, buts about it. The Family and Medical Leave Act is somewhat unique because it contains both. It has one provision that is prescriptive, which is called an interference claim. And we've got a second type, which is proscriptive, which is the retaliation claim. And in the retaliation claim, it's perfectly fine to look at the employer's intent, because in that case, the burden is on the employee to prove a motive. The employee has to show causation between their leave and their termination. They don't have to show that in an interference claim. And so for the district court to have applied an honest belief defense to the interference claim was improper. I feel like a broken record, but they do have to be an employee to have an interference claim. Absolutely. So, again, it comes back to whether she was lawfully or unlawfully terminated. Right. And that's a good point, actually, because although BNSF has argued that we're arguing for a strict liability interpretation of the FMLA, we're not. So why would they say they fired her because they had doubt she was really, you know, they thought she was faking her leave because she goes to the Beyonce concert, she's not responding to their messages. Why is there a fact issue that can show that it was actually they were retaliating for her taking this leave? Because they don't meet the requirements of an honest belief defense in this case. Counsel, I mean, you keep coming back to that. My difficulty in this case is getting past the facts. And I know we're here because of a legal claim. I can't get past the facts. What they know is that she's out on family medical leave. And there is a claim that she has some impairment or disability which renders her incapable of doing her job. But then she shows up at the Beyonce concert. And I'll confess, the Beyonce concert is uplifting for everybody. But she shows up at the Beyonce concert and there's no apparent impairment or disability. Now, we recognize that there could be impairments or disabilities which are not apparent. But there is no apparent impairment or disability. And then they make an inquiry post-concert. And her declaration is, I have not been authorized to take meetings. My doctor hasn't released me to take meetings. So I can't meet with you or talk to you, which seems inconsistent with being at the Beyonce concert. But I guess Beyonce concert is a little different from a meeting. It's different from work. All right. And that's the standard. Under the FMLA, you're entitled to the protections of that statute as long as you can't work. And you don't have to make any disclosure at all about what's wrong with you. No. And, in fact, BNSF delegated those determinations to a third-party administrator, MetLife, so that there's no reason for Miss Courageous, on behalf of BNSF, to inquire into why she was at the Beyonce concert. It's not her place. All of those determinations about eligibility are reserved for MetLife. They don't have a right if they suspect fraud to ask about that? They do. And that's what they suspected. So my kids, I have three kids. Sometimes they're home from take the day off because they're supposedly sick in the morning. And I've had times when, come 6 o'clock, they say, oh, I'm feeling better. I want to go to my friend's birthday party. And I say, no, I don't care if you're better. It just doesn't look right. You're home from school. You shouldn't go to the party. Now, maybe I'm being too strict. Maybe the company was being too strict in taking the view of, hmm, suspicious. You're at the Beyonce concert, but you can't show up for work. But why aren't they entitled to have that harsh viewpoint? That if you're not good enough to work, you shouldn't be good enough to go to the luxury suite at the concert. Because that's not the standard under the FMLA. And there's – Well, it's whether they have a good – it's whether they have an honest belief that there was – this was fraudulent. Let me read a case to you from the Eastern District of Texas. Meadows versus Texas. Texar Federal Credit Union. While on FMLA, the employee was shopping, taking trips, attending ball games and social functions, traveling with her son to a basketball camp out of town and to an out-of-town birthday party, watching television and shuttling her children to and from school and sports practices. The employer argued that the employee was therefore not incapacitated within the meaning of the FMLA. The court held. The court is not convinced plaintiff must show an inability to perform daily activities if she is able to show she is unable to perform her work and her absence from work was necessary. An incapacity requires absence from work as a necessity or an inability to perform daily activities. There's a Department of Labor opinion letter, FMLA-106. What was the site on that Eastern District case you read? It's a – I have a Lexus site. It's 2007, U.S. District, Lexus 4456. And this is from page 63. The Department of Labor has issued an opinion letter, FMLA-106, that states that as long as there's no prohibition in company policy, employees on FMLA can even work for another company while they're on leave. Because the inquiry is whether they cannot perform that job, their job, period. But if an employer makes an inquiry about what's going on and you are nonresponsive to the inquiry, they still don't – and they have some suspicion that there may be fraud or some misrepresentation with regard to the disability. You don't even have to respond to your employer. I wouldn't go that far. But in this case it wouldn't have made a difference because they were right about the fact that she attended the concert. There was nothing to investigate. She went to the concert. Their honest belief defense goes to a misunderstanding of the law. And my client couldn't have done anything about that if she were to have met with the employer. Her therapist told her, don't meet with your employer. Her employer was the reason she was on leave. She called BNSF's EAP, Employee Assistance Program, when she got the call from the employer. And she said, you don't have to go. But it's not your argument that an employee can completely fake needing to take leave. No. And so that's what they were suspicious of. Right. I mean, I understand your point that you don't have to be sitting at home. You can be taking leave because you can't go to work, but yet you're able to go to the grocery store and able to go to church. But that's different than saying you're faking it. And they had reason that that was their suspicion, rightly or wrongly. And they're trying to further investigate their suspicion by talking to her. And she says, I'm not going to talk, which would only heighten the suspicion in a reasonable person's mind. In this case, there was no legitimate purpose for Ms. Couragous to question my client. Ms. Couragous was the director of HR, but she had delegated, at BNSF, delegated these matters to MetLife. So she was insinuating herself into this situation. But they let her take the leave. They weren't interrogating her until this question is raised after the Beyoncé concert. Was there any problem before the Beyoncé concert that you can point to where they were questioning her leave? No, sir. They granted the leave. MetLife granted the leave on behalf of BNSF. BNSF became aware that my client attended the concert and, by their own omission, terminated her because she went to that concert while on leave. We're not asking for extra rights. We're just asking for the same rights that BNSF extended its employees not on leave. And that distinguishes our situation from the honest belief cases cited by BNSF. Thank you. If there are any more questions, I apologize. No, thank you. Good morning. May it please the Court. Brian Neal for BNSF Railway. The appellate brought this case based on a mistaken view of the law and has, for most of the case, focused on that mistaken view of the law. Under the correct view, there is no strict liability in this case and an employer is allowed to terminate employment based on an honest belief of leave abuse. And because the undisputed evidence shows that is exactly why BNSF acted here, our summary judgment was proper. I'm going to try to cover three points today, or at least touch on three points and, in addition, answer any questions that you have. The first of those is the first one that was discussed during Ms. Rycheck's argument. The legal point as to what the framework is here, we do have two claims. We have an interference claim and a retaliation claim. But under this Court's decisions, BNSF acting on the basis of a legitimate reason for discharge in fact does defeat both claims, both the interference claim and the retaliation claim. This Court has very squarely said that in the Miller case as well as in the Caldwell case on which Judge Costa participated. There are some other cases that say that too. Grubb takes the line of reasoning that Judge Costa was discussing earlier that if an employee is lawfully fired, that necessarily extinguishes the right, the entitlement under the FMLA. And the Miller and Caldwell cases are just much more, they just say as a matter of, a straightforward matter of law that an employer's acting on the basis of a legitimate reason defeats both types of claims. So that's the state of the law that we're in here that governs this panel and so it does then turn on the legitimacy of the termination of employment. And one of those legitimate reasons for termination of employment is an employer's honest belief that an employee is misusing or abusing leave. That is a basis of an employer's action that is separate from, different from the actual proper protected conduct of taking a leave of absence. Now, as I understand the opposing argument to that, it is that an employer cannot act on the basis of an honest belief of leave abuse because leave abuse has the word leave in it and it therefore necessarily relates to the leave and an employer can't act on that basis. And one of the cases, we've cited quite a few cases in our brief about honest suspicion of abuse from the Third Circuit and the Seventh Circuit. One of those cases is the Karyotis case out of the Seventh Circuit and I bring that up here only because I heard the comparison earlier about COBRA, which is another statute that grants rights. And I point that out because Karyotis actually involved both the same two claims we're dealing with here as well as a COBRA claim and the Seventh Circuit did come in and make the distinction that was referred to earlier as to the COBRA claim and I think reverse summary judgment or ruling the employee's favor, whatever the context was, on that COBRA claim, but at the same time said no on the interference claim and the employer's honest suspicion of leave abuse was sufficient to terminate employment. And that's because there's a difference between an employee's protected conduct under the statute and misconduct that happens to bear some relationship to protected activity. And we've given an example in our brief that's a bit extreme of an employee taking FMLA paperwork, wrapping it around a brick, throwing it through the window just to make that point. That's probably not going to happen, but that's just to make that point that you can certainly have activity conduct that's related to leave that's still punishable and no court's going to say, well, you can't punish that employee because the employee was, by doing that, submitting FMLA paperwork and the employee's on leave and was submitting something that the employer required. A closer-to-home example would be this court's Acker decision where the court said that there's a rule in place by the employer of reporting in regarding FMLA days and the court said if the employee doesn't comply with that rule, the employer can terminate employment and the court said terminate employment and in that case it was a disciplinary layoff, but the court said the employer can terminate employment even if those days are FMLA protected and that's conduct that's clearly wrapped in and related to FMLA activity and the court drew that distinction and it's a line that courts have drawn in the employment statutes for years and years since Title VII retaliation cases when you have protected conduct that happens to be wrapped up with misconduct and the other line that's been drawn, the other point that's been made for years and years is that unless you've got an employee with a good cause contract or a collective bargaining agreement with a just cause provision the employer doesn't have to prove actual misconduct. The employer's allowed to rely on its honest belief of that misconduct and that is sufficient and has been sufficient under all these other statutes and the same is true under the FMLA and we've cited all of those cases that involved honest suspicion of leave abuse that support that but even if we didn't have those, we would get to the same place by looking at Miller and Caldwell and this court's long-standing discrimination cases involving employee misconduct and an employer's honest belief or sometimes it's called honest belief, sometimes reasonable belief, sometimes good faith belief but it's all the same thing. Let me ask you a factual question. Yes, Judge. So there's the Beyonce concert, there's a voicemail over the weekend the plaintiff calls back and says allow me some time and says my doctor hasn't released me yet I asked for a little patience during this time and then the response from HR is you need to be in touch by the end of the day why doesn't that show that they weren't giving her a chance they weren't really interested in fleshing out whether there was leave abuse it just doesn't make sense to me that you would say I need you to get back to me after someone's been told that a doctor hasn't released the person to meet Two things about that the original request that prompted that email was to either meet or to just call back and have a phone call and so there didn't need to be a big meeting Ms. Jackson didn't have to come in and have a meeting she could have just called back Ms. Corgis and explained that and so then the response then is my doctor hasn't released me to meet and Ms. Corgis gets the email back saying well I haven't been released to meet and she's thinking well I didn't require a meeting you could just call me and you're able to type an email and I know you were able to go to the concert and then second she testified that well by then I'm thinking that this employee is abusing leave so if I think she's abusing leave why would I allow her to continue on abusing leave without trying to answer a question and I know she's not the evidence shows she's not in a situation where she's in a hospital bed or otherwise incapacitated and can't talk because I know she went to the concert and I know she's able to email so she basically said if I think an employee's abusing leave I'm not going to just continue on without trying to get an answer to the question. I guess I just didn't see what a few days is I mean if nothing else it's not a best practice I don't think and I will say that she did she didn't just the HR person Ms. Corgis didn't just get that email and say oh you're fired she wrote back to her one more time and said no no as you pointed out no no you don't understand we need to talk today or your job is in jeopardy and even then she didn't terminate employment at the end of that day she waited until the end of the following day still hadn't heard back from her and then she sought approval to terminate employment so this is a situation that perhaps could have been altered had Ms. Jackson just picked up the phone and called her and said what do you want to know and maybe she could have given her an explanation that would have changed things but we don't know and that's why you have to look at this as not just an issue about going to the concert and then her reaction this was mentioned earlier her reaction to the employer's attempt to look into it. Was there a doctor? I know she was seeing employee assistants did it come out in discovery was there actually a doctor who had told her not to meet? I believe the only record evidence of that is Ms. Jackson testified that her therapist said well there's two things her therapist said not to meet and that she also testified that the in-house EAP which is essentially a medical provider in-house and so they don't communicate with the BNSF decision makers that that person had also said that. Now the notes of that communication reflect the opposite but obviously Ms. Jackson has said otherwise but our point that we've made about that is that the HR person didn't know any of that Ms. Jackson didn't say she just said my doctor says I'm not released to meet she didn't say I've been advised not to talk to you I'm unable to talk to you my medical condition is such that I can't have a conversation about this anything that would have told the HR person somehow I've got an employee that is able to go to in a way that she can't have a quick conversation with me to explain that inconsistency and what Ms. Corrigus knew the only thing that she knew about her medical condition was the two emails that were received on May 2nd the first one at the earlier part of the day when Ms. Jackson left the workplace and said I'm taking sick time for the rest of the day I have a doctor's appointment and will follow up and then the next one later in the day I've seen a doctor, I'm not well to return back to work MetLife will be forwarding paperwork for me to be off on short term disability and that's record 385 and 386 so you have an HR person that sees an employee saying I'm out in a way that certainly suggests an incapacity a personal incapacity to function and then hears about her going to the concert and in fact the way the whole concert issue came up was that two other BNSF employees were at the concert, saw Ms. Jackson and they thought it was unusual and so they reported it to Ms. Jackson's supervisor who then reported it to the HR person and all they knew was that they had heard she was out sick and just knowing that they thought it was unusual enough to point to so there's certainly enough here for an HR person to not haul off and fire her just on hearing she went to the concert but to want to look into it and ask questions about it and that's what she tried to do and unfortunately Ms. Jackson just closed the door on it and didn't do it in a way that explained any reason for closing the door on it and there's nothing whatsoever here that calls into question the honesty of Ms. Corrigus' belief that she was misusing the leave in fact I'll point out that getting to my third point here about the evidence itself the pretext issue most of the arguments relate to the basic false or unworthy of credence language that appears in the cases and on page 141 of the record paragraph 35 that's the live complaint Ms. Jackson admits that the NSF based its decision in part on a belief of leave abuse it says defendant terminated plaintiff because in part it believed that plaintiff was not entitled to medical leave based on her attendance at the May 9 concert so when you take that admission that wipes away any attempt to prove pretext and the only thing that would be left would be an effort to show assuming that the motivating factor standard applies which is what parties have assumed in the briefs you would have to show that although that was one reason there also was a retaliatory motive and the only effort that's been made there has been to point to evidence that in fact doesn't show a retaliatory motive toward protective leave but shows thoughts about unprotected leave or misuse of leave and I'll mention only because Judge Reveley is here that in the Williams vs. Weindell-Sitko case, an unpublished case but at a footnote it makes the same point, that case also involved an employee who was accused of lying about taking leave and the employee pointed to the employer's conduct in hiring an investigator and going after the employee as evidence of pretext or a retaliatory motive and the court said well no, that in fact proves the employer's point it proves what the employer was looking at or the basis of the employer acting was that it thought the employee was lying and that's what that's consistent with and you can say the same thing here about the arguments concerning what Ms. Corrigus did with respect to Ms. Jackson I think that I've covered everything that I'd like to cover so I'm happy to give back time if there aren't any more questions for me We're happy to take it. Thank you very much. Thank you, your honor Rebuttal Thank you BNSF never offered a satisfactory reason why it had to question Ms. Jackson while she was on leave. There was no urgency The FMLA doesn't guarantee paid leave Ms. Corrigus could articulate no reason why she needed it But was she being paid? I mean company policy usually can pay for the leave I think she was covered under a short term disability policy Carrie Whitman, who is Michelle Jackson's immediate supervisor testified that she was uncomfortable meeting with Michelle Jackson while she was on leave because she thought that was inappropriate What if Michelle Jackson had decided to go to the Beyoncé concert? I know this is a big luxury box I'll probably never be in one as big as that but couldn't you imagine an encounter with an employee of BNSF if you're in the BNSF's luxury suite? It is undisputed that Ms. Jackson didn't violate a company policy by doing that No, what I'm saying is you're suggesting that she just didn't want to encounter one of the employees? Is that what you're saying? She did not want to subject herself to an interrogation while she was on leave for stress for depression that was caused by her work circumstances So she knew that was an interrogation and I guess all I'm saying is couldn't there have been an interrogation in the suite at the Beyoncé concert? I guess in my view it would be unlikely since it wasn't at work during work hours but it's possible All I'm saying is if you want to avoid an encounter with employees or certain employees, I don't know how you end up going to a luxury suite that the company has where one of your goals is to avoid an encounter with employees in that company That's all I'm saying, but go ahead So I would like to just point out that we, in reference to Mr. Neal's brick analogy we would never take the position that that would insulate an employee from a termination There's a regulation directly on point 29 CFR section 825.216 which says that an employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period So if Ms. Jackson had violated some sort of policy by attending the Beyoncé concert that would be another story, but she didn't She was penalized for being on leave while she attended the concert and that's just not supported by the law Speaking of regulations 29 CFR section 825.220C says employers cannot use the taking of FMLA leave as a negative factor in employment actions such as hirings, promotions, or disciplinary actions But that's precisely what they did and what they've admitted to doing in this case Stallings I don't have that site in front of me immediately but it stands for the idea that an employee can prevail under an interference theory if he was denied substantive rights under the FMLA for a reason connected with his leave Taking these regulations along with the entitlement language of section A1 of the statute itself it's clear to me that BNSF interfered with her rights under the FMLA when it terminated her in the middle of her leave With turning to the issue of whether or not honest belief is available to defeat her retaliation claim it's appropriately considered at that stage because intent matters So in theory that defense is available to BNSF but in practice it fails and the reason is in line with the case law To be entitled to the benefit of this rule the employer must show that its belief was reasonably based on the particularized facts rather than on ignorance and mythology The employee also has an opportunity to show that the employer made an error too obvious to be unintentional In this case, Ms. Kouregis is an attorney She's the director of human resources She had been for 16 years but she also was a practicing labor and employment attorney before she went into human resources She testified to a solid understanding of how the FMLA worked I walked her through the standards and she admitted that in order to be qualified for FMLA one only needs to show an ability to work and she testified that she understood that one could be entitled to FMLA and still be physically able to go to a concert in their free time So in the face of evidence like that it's obvious to me that she did not have an honest belief that she had violated the FMLA by attending this concert She testified to a very clear understanding that she was not foreclosed from attending that concert while she was on leave Thank you counsel. I think I misspoke. I think I said what if Ms. Jackson had shown up and we know she did show up and what I meant to say was Ms. Jackson's supervisor or Ms. Kouregis had shown up So I apologize for making that question more confusing than it should have been.